IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN SOTELO and STUDIO 171, Inc., | ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 07 C 2447 |
| SUBURBAN 171, Inc., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss Counts I and IV of the complaint. For the reasons stated below, we grant Defendants' motion in part and deny the motion in part.

## BACKGROUND

In 2006, Plaintiff Stephen Sotelo ("Sotelo") and Defendant Selina Massey ("Massey") allegedly opened a salon, spa, and tanning center called Studio 171 ("Studio 171"). Sotelo claims that on or about March 15, 2007, Massey relinquished her ownership interest in Studio 171. The same day, Defendants Ryan Granrath ("Granrath") and Greg Benuska ("Benuska"), who owned a tattoo parlor next to

1

Studio 171 that was called Suburban 171 ("Suburban 171"), allegedly told Sotelo that they were the new owners of Studio 171. Granrath and Benuska allegedly claimed that the landlord had given the shop to them and that Sotelo was no longer allowed on the property. Granrath and Benuska allegedly then had the locks changed so that Sotelo could not reenter Studio 171.

According to Plaintiffs, the Defendants continue to operate the salon as Studio 171 and Massey continues to work there. Sotelo claims that Defendants currently use the same signage and have the same employees as when Sotelo operated Studio 171. However, all credit card charges at Studio 171 are now allegedly processed at Suburban 171 and the funds are thus diverted to Suburban 171.

Sotelo brought the instant action on behalf of himself and on behalf of Studio 171. The complaint includes a claim alleging a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, brought against all Defendants (Count I), a trespass and wrongful eviction claim brought against all Defendants (Count II), a conversion claim brought against all Defendants (Count III), a federal unfair competition claim brought under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, brought against all Defendants (Count IV), an Illinois state law trademark infringement and unfair competition claim brought against all Defendants (Count V), an Illinois unfair business practices claim brought

against all Defendants (Count VI), an Illinois deceptive trade practices claim brought against all Defendants (Count VII), a breach of fiduciary duty claim brought against Massey (Count VIII), an aiding and abetting claim brought against the other Defendants (Count IX), a breach of contract claim brought against Massey (Count X), and a tortious interference claim brought against all Defendants (Count XI). Defendants move to dismiss Counts I and IV.

## LEGAL STANDARD

In ruling on a motion to dismiss, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). In order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High Sch.*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not,

the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 2007 WL 2215764, at *2 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action. . . .'" *See Sanjuan v. Amer. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Kyle*, 144 F.3d at 455, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

### I. RICO Claim (Count I)

Defendants argue that Plaintiffs have failed to state a RICO claim. Plaintiffs fail to respond to Defendants' arguments and Plaintiffs instead contend that they should not be required to respond to Defendants' vague and unsupported arguments. Plaintiffs quote *Cannon v. Burge*, 2006 WL 273544, at *8 n.8 (N.D. Ill. 2006), for the proposition that "'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. . . .'" *Id.* (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)). Defendants specifically argue in the motion to dismiss that "[a] Plaintiff alleging fraud must state with particularity specific fraudulent acts [comprising the] fraud," including the "time, place, and particular contents of the false representations as well as the identity of the person making the representation, and what was obtained or given up thereby." (Mot. 2). Although the Defendants do not specifically reference Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), it is apparent from the reference to pleading with particularity and the pleading requirements relating to aspects such as the time and place of the fraud that Defendants are arguing that Plaintiffs failed to plead the complaint with the requisite specificity under Rule 9(b). Plaintiffs also incorrectly contend that Defendants "offer no legal authority in support of their dismissal

5

request." (Ans. 1)(emphasis in original). In addition to the clear references to the requirements of Rule 9(b), Defendants cite *Landon v. GTE Communications Services Inc.*, 696 F.Supp. 1213 (N.D. Ill. 1988), (Mot. 2), in which the court indicated that the plaintiff had to plead a RICO claim with particularity in accordance with Rule 9(b). 696 F.Supp. at 1217-18. We note that the citation for *Landon* provided by Defendants lists the reporter volume as 646 instead of 696, an apparent typographical error, but even a cursory search by Plaintiffs performed with the year and party names would have identified the proper citation and opinion for the Plaintiffs. Plaintiffs cannot avoid a dismissal motion due to their failure to properly plead the RICO claim and by unreasonably asserting that they did not understand Defendants' arguments. A plaintiff is required to plead a claim with particularity in accordance with Rule 9(b) if the claim "'sounds in fraud'-in other words, one that is premised upon a course of fraudulent conduct. . . ." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)(stating that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations"). To plead a fraud claim with particularity, a plaintiff must plead the "'who, what, when, where, and how'" in regard to the fraud. *Id.* (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990)).

Plaintiffs allege in the complaint that Defendants violated RICO by engaging

6

in "financial institution fraud," by the "unlawful use of fraud and related activity in connection with access devices," and by engaging in "wire fraud." (Compl. Par. 28). Plaintiffs failed to plead specific facts concerning when the alleged fraud took place. Plaintiffs merely indicate that Defendants engaged in the alleged fraud sometime after March 15, 2007, when Defendants allegedly changed the locks to Studio 171. Plaintiffs allege that "[t]hereafter" Defendants began engaging in the fraud. (Compl. Par. 22). Plaintiffs also provide some minor details concerning the alleged fraud in Paragraphs 23 and 28 of the complaint, but Plaintiffs fail to provide any approximate dates when the alleged conduct occurred.

Plaintiffs also failed to provide specific facts concerning how the alleged fraud was perpetrated. In order to prove a fraud claim under Illinois law, a plaintiff must establish "that defendants, with the intent to induce plaintiffs to act, made a false statement of material fact which defendants knew or believed to be false," and that the plaintiff "justifiably relied on the statement and suffered damages resulting from that reliance." *Assoc. Ben. Servs., Inc. v. Caremark RX, Inc.*, 2007 WL 2012364, at *8 (7th Cir. 2007)(citing *Williams v. Chicago Osteopathic Health Sys.*, 654 N.E.2d 613, 619 (Ill. App. Ct. 1995)). Plaintiffs allege in a conclusory fashion that Defendants violated RICO by engaging in "financial institution fraud," by the "unlawful use of fraud and related activity in connection with access devices," and

by engaging in "wire fraud." (Compl. Par. 28). However, Plaintiffs fail to explain how the fraud occurred. Plaintiffs fail, for example, to explain how they relied upon statements made by Defendants to the detriment of the Plaintiffs. Nor are there allegations in the complaint that explain how Defendants induced Plaintiff Sotelo to act. According to Plaintiffs, one day Granrath and Benuska told Sotelo that he could no longer enter the premises at Studio 171 and then locked Sotelo out. Such allegations do not concern fraudulent statements made to Sotelo or any reliance on his part.

In addition, Plaintiffs' broad allegations concerning the fraud fail to identify the precise facts. Plaintiffs allege, for example, that when a Studio 171 customer paid with a credit card, Defendants were "steal[ing] the customer's payment intended for Studio 171." (Compl. Par. 23). However, Plaintiffs fail to explain how Defendants were stealing the customer's money. There are no facts in the complaint explaining whether Defendants provided services to the customers when Defendants took the credit cards to Suburban 171, or whether Defendants were taking the payments from customers in Studio 171 and not providing services. Nor are there facts that explain whether Defendants were processing a customer's credit card in regard to amounts owed for past services, or for services at the time of the processing, or for future services. Thus, Plaintiffs failed to plead with particularity

how the fraud occurred.

It is also not clear from the complaint whether Plaintiffs are referring to a fraud perpetrated against themselves or fraud perpetrated on Studio 171's customers. The allegations in the complaint suggest that Plaintiffs are alleging that a fraud was committed against the Studio 171 customers who allegedly were deceived into believing that the same salon was in operation. Plaintiffs allege that Defendants continue "to 'serve' Studio 171's customers by pretending that Studio 171 still operates" and that by running each customer's credit card through Suburban 171's machine Defendants are "steal[ing] the customer's payment intended for Studio 171." (Compl. Par. 23). Even if the fraud was perpetrated on such customers, Plaintiffs failed to allege facts that would indicate that Plaintiffs have standing to bring a fraud claim on behalf of the customers. *See Allen v. Wright*, 468 U.S. 737, 751 (1984)(referring to the "general prohibition on a litigant's raising another person's legal rights"). Therefore, since Plaintiffs have failed to plead the RICO claim with particularity, we grant Defendants' motion to dismiss the RICO claim (Count I).

II. Unfair Competition Claim (Count IV)

Defendants move to dismiss the unfair competition claim (Count IV). A

9

plaintiff can bring an unfair competition claim under the Lanham Act pursuant to 15 U.S.C. § 1125(a), and for such a claim the plaintiff must show that: "(1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Engineering., Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001)(indicating that the courts should employ the same standard that is used for trademark infringement claims).

Defendants contend that "Studio 171" is a generic or descriptive term and that in order to show that the mark is protected, Plaintiffs must show that the mark acquired a secondary meaning. A generic or descriptive mark can be protectable even if it is not a registered mark if the mark has acquired a secondary meaning. *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924-25 (7th Cir. 2007); *see also Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 988 (7th Cir. 2004)(stating that "[a] descriptive mark is not legally protected unless it has acquired secondary meaning"). Plaintiffs correctly point out that Defendants' arguments concerning whether "Studio 171" is a generic or descriptive mark are premature. Plaintiffs are not required to include allegations in the complaint or to present arguments at the pleadings stage in response to Defendants' motion to dismiss as to that issue in order to show that Plaintiffs have stated a valid unfair competition claim. Also, even if we were to conclude that "Studio 171" is a generic or descriptive mark at this juncture, although

Plaintiffs have not specifically included the phrase "secondary meaning" in the complaint, there is no pleading requirement that obligates Plaintiffs to use those exact words. Plaintiffs have alleged that "[a]s a result of Studio 171's exclusive and extensive use of its Studio 171 name and mark, it acquired considerable value and became uniquely associated with Studio 171 among the relevant consuming public within the Lockport area. . . ." (Compl. Par. 39). Such allegations at least suggest that it is possible that the term "Studio 171" acquired a secondary meaning. We note that at the motion to dismiss stage, we are merely reviewing the sufficiency of Plaintiffs' allegations to determine whether Plaintiffs have stated a claim. At the summary judgment stage, the court will determine whether "Studio 171" is a generic or descriptive term, and whether Plaintiffs have pointed to sufficient evidence that shows that the name has, in fact, acquired such a secondary meaning.

Defendants' arguments are also premature at this juncture since they involve an examination of facts and evidence that are beyond the scope of the complaint. For instance, Defendants concede that the term "Studio 171" could possibly have acquired a secondary meaning if it was "used in a design or display which create[d] a separate and distinctive commercial impression. . . ." (Reply 2). Defendants contend that the term "Studio 171" was not used in such a manner, but such a determination cannot be made based on the allegations in the complaint before us.

11

Other facts and evidence, which are not included in the complaint, relating to how recognizable "Studio 171" became to the general public will also be relevant in assessing whether it acquired a secondary meaning. *See Nat. Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 487 (7th Cir. 1982)(stating that a product acquires a secondary meaning when "the product has become identified with a particular producer"). Such facts can be investigated during discovery and presented at the summary judgment stage. Therefore, we deny Defendants' motion to dismiss the unfair competition claim (Count IV).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion to dismiss the RICO claim (Count I) and deny the motion to dismiss the unfair competition claim (Count IV).

Samuel Der-Yeghiayan
United States District Court Judge

Dated: August 29, 2007